This appeal concerns the imputation of liability to a defendant depending upon the status of other defendants as independent contractors or as agents or employees of the first defendant. Debra Spell brought an action against ConAgra, Inc., Billy Ray Sharpton, and Leroy Arrington, based on the alleged wrongful death of her minor son, Shannon. The trial court entered summary judgment for ConAgra and made that judgment final pursuant to Rule 54(b), Ala.R.Civ.P., and Spell appeals.
Sharpton owned and operated a chicken farm. As part of his chicken farming activities, Sharpton would take in young chickens belonging to different poultry processors, care for them, and, when they reached maturity, return them to the processors. Sharpton did this for a number of processors, including ConAgra. *Page 502 
In April 1986, Sharpton and ConAgra entered into a contract whereby ConAgra agreed to supply a flock of pullets (young chickens) and to provide feed and medication for them and Sharpton agreed to manage and care for the chickens, provide heat and water, and to feed them, utilizing feed provided by ConAgra. Sharpton was to be paid based on the efficiency of his management and the number of chickens raised to maturity. A representative of ConAgra visited the farm on a weekly basis to inspect the chickens and the feed and watering facilities and to see if the chicken house was being maintained in a dry and sanitary condition.
Arrington was referred to in the poultry trade as a "chicken catcher." As a chicken catcher, Arrington provided several services to ConAgra, including catching chickens in one chicken house and moving them to another chicken house or to a processing plant. Arrington also provided a disease control service known as "fowl poxing" and he administered eye drops. Arrington owned his own equipment and received the medication from ConAgra. At the end of each week, Arrington was instructed by a representative of ConAgra concerning the type of work that he was to do the following week and at which farm the work was to be done.
At some time prior to July 10, 1986, Arrington was instructed to go to Sharpton's farm and administer eye drops and vaccinations to ConAgra's flock of pullets. On July 10, 1986, Arrington and his work crew went to Sharpton's farm to perform those services. Spell's son, Shannon, was employed by Arrington and was a part of the crew that went to Sharpton's farm. At approximately 11:00 a.m., Shannon came into contact with an electrically charged wire in Sharpton's chicken house and was electrocuted.
Spell alleged in her complaint that Shannon's death was the result of negligent or wanton conduct on the part of Sharpton, Arrington, and ConAgra. The trial court granted ConAgra's motion for summary judgment. Spell appeals, contending that Sharpton and Arrington were agents of ConAgra and that, due to the agency relationship, ConAgra is liable for Sharpton's and Arrington's negligence and wantonness. ConAgra, on the other hand, maintains that its relationships with Sharpton and Arrington were not agency relationships, but that those parties were independent contractors.
In Pugh v. Butler Telephone Co., 512 So.2d 1317 (Ala. 1987), the Court stated:
 "Plaintiffs correctly state that whether a relationship is that of an independent contractor or master-servant depends on whether the entity for whom the work is being performed has reserved the right of control over the means by which the work is done. Sawyer v. Chevron USA, Inc., 421 So.2d 1263 (Ala. 1982). In the absence of a non-delegable duty, the mere retention of the right to supervise or inspect the work of an independent contractor as the work progresses to ensure compliance with the terms of an agreement does not operate to create a master-servant relationship. There must be a retention of control over the manner in which the work is done, before an agency relationship is created. Alabama Power Co. v. Beam, [472 So.2d 619, 625 (Ala. 1985)]; Brown v. Commercial Dispatch Publishing Co., 504 So.2d 245
(Ala. 1987)."
512 So.2d at 1318. In determining the relationships between ConAgra and Sharpton and ConAgra and Arrington, we must review their contracts and the actions of the parties pursuant to the contracts. Id.
The standard of review of a summary judgment entered in favor of a defendant requires the appellate court to review the record in a light most favorable to the plaintiff and to resolve all reasonable doubts against the defendant.Id. See also Harrell v. Reynolds Metals Co., 495 So.2d 1381
(Ala. 1986); Burt v. Commercial Union Ins. Co., 489 So.2d 547
(Ala. 1986); Autrey v. Blue Cross Blue Shield of Alabama,481 So.2d 345 (Ala. 1985).
With this in mind, we will first turn our attention to the relationship between ConAgra and Sharpton. This relationship *Page 503 
was governed by a written contract. ConAgra was to provide the young chickens to Sharpton, along with the necessary feed, medicines, and "other supplies." Sharpton was to provide all other equipment, such as houses, stoves, feeders, waterers, etc., and was to furnish all labor, litter, water, fuel, and power reasonably necessary for the proper handling and feeding of the chickens and for their proper care. ConAgra retained the right to visit the premises on a weekly basis to inspect the chickens, inspect the feeding and watering facilities, and make sure that the litter in the facility was dry. ConAgra also retained the right to cull any chickens that, by reason of age, infirmity, condition, or other cause, were unprofitable to retain.
This Court has held that " '[c]ontrol is not established if the asserted [employer] retains the right to supervise the asserted [employee] merely to determine if the [employee] performs in conformity with the contract.' " Williams v.Tennessee River Pulp Paper Co., 442 So.2d 20, 21 (Ala. 1983) (citations omitted) (brackets in Williams) (quoting BloedelTimberlands Dev., Inc. v. Timber Indus., Inc., 28 Wn. App. 669,674, 626 P.2d 30, 33 (1981)).
Examining the relevant evidence, we cannot find a reasonable inference of fact that would create a genuine issue concerning the alleged employment relationship between ConAgra and Sharpton. The evidence conclusively establishes that Sharpton was an independent contractor.
We now turn our attention to the relationship between ConAgra and Arrington. The undisputed evidence shows that Arrington had a verbal agreement with ConAgra. Pursuant to that agreement, a representative of ConAgra would contact Arrington and tell him which farm to go to and what medication to use or to what location the chickens were to be moved. ConAgra supplied the medication, syringes, and eyedroppers. Arrington then did the work, using his own trucks, coops, nets, and employees. Arrington made all decisions concerning the hiring and firing of employees and how much they were paid. ConAgra merely inspected Arrington's work from time to time to ascertain that the work was done correctly.
There is no evidence that ConAgra retained a right of control over the manner in which Arrington completed his work. ConAgra merely retained the right to inspect and approve the work. As was the case with Sharpton, Arrington was an independent contractor as to ConAgra and not an agent.
We hold that the trial court did not err in granting ConAgra's motion for summary judgment. There being no reversible error, the judgment of the trial court is affirmed.
AFFIRMED.
All the Justices concur.